IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-153-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.    CARLOS FONG ECHAVARRIA,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Andrea Surratt, Assistant United States Attorney for the District of Colorado, and the defendant, CARLOS FONG ECHAVARRIA, personally and by counsel, Timothy P. O'Hara, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I.    AGREEMENT

**A. Defendant's Plea of Guilty:**

The defendant agrees to

(1)    plead guilty to Counts Three and Four of the Superseding Indictment charging violations of 21 U.S.C. § 846 and 18 U.S.C. § 1956(h) [handwritten: "Superseding" inserted; initials "TPO" and "CAFE"]

(2)    waive certain appellate and collateral attack rights, as explained in detail below; and

(3)    agree not to contest forfeiture as more fully described below.

COURT EXHIBIT 1

**B. Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A). The government agrees to move to dismiss Counts One, Two, and Five of the Indictment with prejudice. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment. The parties understand that this agreement is not binding on the Court.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

**C. Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum sentence provided in the statutes of conviction, 21 U.S.C. § 846 and 18 U.S.C. § 1956(h);

(2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 32; or

   (3) the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

  The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

   (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

   (2) the defendant was deprived of the effective assistance of counsel; or

   (3) the defendant was prejudiced by prosecutorial misconduct.

  The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

  The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in

18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

### D. Forfeiture of assets:

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 28 U.S.C. § 2461(c) and 21 U.S.C. § 853, whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames. The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

## II.  ELEMENTS OF THE OFFENSES

The parties agree that the elements of Counts Three and Four are as follows:

### Count Three:  21 U.S.C. § 846

1. Two or more persons agreed to violate the federal drug laws, here, to distribute and possess with the intent to distribute controlled substances;
2. The defendant knew the essential objective of the conspiracy and knowingly and voluntarily involved himself in it;
3. The controlled substances involved in the conspiracy were at least 1 kilogram or more of a mixture and substance containing heroin, and a mixture and substance containing fentanyl; and
4. There was interdependence among the members of the conspiracy;

### Count Four:  18 U.S.C. § 1956(h)

1. Two or more people agreed to violate money laundering laws, specifically:
   a. The transportation, transmission, of transfer of monetary funds or instruments;
   b. From a place in the United States to or through a place outside the United States, or to a place in the United States from or through a place outside the United States;
      i. With the intent to promote the carrying on of a specified unlawful activity (drug trafficking); or
      ii. Knowing that the instrument or funds represent the proceeds of some form of unlawful activity, and knowing that the transportation is designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity (drug trafficking);
2. The defendant knew the essential objective of the conspiracy and knowingly and voluntarily involved himself in it; and
3. There was interdependence among the members of the conspiracy.

### III. STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of Count Three of the Indictment is not more than life imprisonment; not less than 10 years' imprisonment;[1] not more than life supervised release; not less than 5 years' supervised release; a maximum fine of $100,000,000 or twice the gain or loss from commission of the offense; and a $100 mandatory victim's fund assessment fee.

The maximum sentence for a violation of Count Four of the Indictment is not more than 20 years' imprisonment; not more than a $250,000 fine or twice the gain or less from the commission of the offense; not more than 3 years' supervised release; and a $100 mandatory victim's fund assessment fee.

### IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States, or confined indefinitely if there is no country to which the defendant may be deported, denied future admission into the United States, and/or to be denied citizenship.

### V. STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18

---

[1] It is the parties' position that 18 U.S.C. § 3553(f) applies in this case, allowing the Court to sentence the defendant below his otherwise-mandatory minimum of 120 months.

U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

From about September 2019 through about May 2020, the defendant and his co-defendant Daniele Pulia coordinated bulk money pickups in the United States of the proceeds of drug trafficking (in violation of 21 U.S.C. §§ 841(a)(1) and 846)) in order to remit the money to Mexico and elsewhere to drug traffickers to whom the money was owed. The defendant knew that the funds involved in these transactions were the proceeds of drug trafficking. He also knew that the money was being transferred back to the owners of the drugs in order to continue their drug trafficking enterprises. One purpose of these transactions was to conceal the nature, location, source, ownership, or control of the funds.

For some of these pickups, the defendant and Pulia coordinated with an undercover officer (the "UC"). In these transactions, the defendant, Pulia, or both the defendant and Pulia together would contact the UC and indicate that there was bulk cash ready to pick up somewhere in the United States. These pickups ranged from around $20,000 to around $200,000 each. The defendant or Pulia would put the UC in contact with a co-conspirator in the United States who would deliver the bulk currency to

the UC or another undercover law enforcement officer. The UC would then remit the amount of the pickup, less the UC's fee, to the defendant or Pulia in bitcoin using bitcoin addresses provided by the defendant or Pulia. In total, the defendant and Pulia arranged the following bulk currency pickups:

| Date | Location | Amount |
|---|---|---|
| 04/20/20 | NASHVILLE | $75,660.00 |
| 04/15/20 | NASHVILLE | $100,000.00 |
| 04/09/20 | DENVER | $100,020.00 |
| 03/13/20 | DENVER | $79,921.00 |
| 02/26/20 | DENVER | $30,000.00 |
| 02/26/20 | SALT LAKE | $21,500.00 |
| 02/19/20 | WINSTON-SALEM | $146,000.00 |
| 02/06/20 | SEATTLE | $69,000.00 |
| 11/15/19 | DENVER | $19,300.00 |
| 11/14/19 | NYC | $199,980.00 |
| 10/06/19 | DENVER | $70,000.00 |
|  | TOTAL | $911,381.00 |

The defendant and Pulia worked together in this money laundering business for their mutual benefit in order to make money.

In November 2019, Pulia asked the UC if the UC wished to purchase heroin and received a sample of "M30" pills.[2] from Pulia. The UC agreed to purchase the heroin and pills and, in December 2019, the defendant contacted the UC to finalize the deal. Between January 2, 2020, and January 27, 2020, the defendant and Pulia updated the UC on the progress of the heroin and pills. On February 6, 2020, the defendant coordinated the drug delivery to the UC by connecting the UC to a co-conspirator ("CC-1") in the United States. Initially, CC-1 delivered 16 M30 pills but the wrong amount of heroin (approximately 54 grams) to the UC, and both the defendant and Pulia worked to

---

[2] These pills were suspected to contain oxycodone.

fix the problem. Later on February 6, 2020, CC-1 met with the UC again and, this time, delivered approximately 1.55 kilograms of heroin and four M30 tablets.

The four pills that were delivered to the UC on February 6, 2020, tested positive for fentanyl and weighed a total of 0.4450. grams. The other pills were not tested, but together with the fentanyl that was tested, weighed a total of 2.330 grams. The substance that was first delivered to the UC tested positive for heroin and weighed a total of 49.8 grams. The substance delivered on February 6, 2020, also tested positive for heroin and it was determined to weigh 1,492 grams.[3] The defendant and Pulia worked together to facilitate this drug transaction for their mutual benefit in order to make money and to gain the trust of the UC.

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent

---

[3] The purity of the substance was determined to be 35% +/- 4%. As a result, the amount of actual heroin was approximately 522 grams.

obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

Count Three

- a) The defendant is responsible for distributing or possessing with intent to distribute 2.33 grams of fentanyl and 1,541.8 grams of heroin for a total of 1.547.38 kg of converted drug weight.
- b) Pursuant to U.S.S.G. § 2D1.1(b)(18), two levels are subtracted.
- c) Pursuant to U.S.S.G. § 2D1.1(c)(5), the defendant's adjusted offense level for Count Three is 28.

Count Four

- d) Pursuant to U.S.S.G. § 2S1.1(a)(2), the base offense level for Count Four is 8 plus the number of offense levels from the table in U.S.S.G. § 2B1.1 corresponding to the value of the laundered funds. The defendant is responsible for laundering approximately $911,381.00, which corresponds to a 14-level increase, pursuant to U.S.S.G. § 2B1.1(b)(1)(H).
- e) Pursuant to U.S.S.G. § 2S1.1(b)(1), because the defendant knew the laundered funds were the proceeds of distribution of a controlled substance, 6 levels are added.
- f) Pursuant to U.S.S.G. § 2S1.1(b)(2)(C), the government believes that the defendant was in the business of laundering funds, and therefore that 4 levels should be added. The defendant objects to this enhancement.
- g) Pursuant to U.S.S.G. § 2S1.1(b)(3), the government believes that the laundering was sophisticated, and therefore that 2 levels should be added. The defendant objects to this enhancement.
- h) According to the government, the adjusted offense level for Count Four is 34. According to the defense, the adjusted offense level is 28.

Total Offense Level

i) The government believes that because the trafficked drugs in Count Three and the laundered funds in Count Four do not involve the same victim or the same act or transaction, the counts are not grouped pursuant to U.S.S.G. § 3D1.2. .Therefore, pursuant to U.S.S.G. § 3D1.4, the government believes that Count Four is assigned one level and Count Three is assigned ½ level. Accordingly, the offense level is increased by one level for an offense level of 35.

j) The defendant believes that the offenses are grouped based on the grouping rules described in U.S.S.G. § 3D1.2(c) and (d). Therefore, no additional adjustment should be added.

k) Pursuant to U.S.S.G. § 3E1.1(a) and (b), three levels are subtracted for acceptance of responsibility.

l) According to the government, the resulting total offense level is 32. According to the defendant, the resulting total offense level is 25.

m) The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category I.

n) The career offender/criminal livelihood/armed career criminal adjustments do not apply.

o) The advisory guideline range resulting from the government's calculations is 121-151 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated by the government above could conceivably result in a range from 121 months (bottom of Category I) to 262 months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

p) The advisory guideline range resulting from the defendant's calculations is 57-71 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated by the government above could conceivably result in a range from 57 months (bottom of Category I) to 137 months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

q) Pursuant to guideline § 5E1.2, assuming the government's estimated offense level above is correct, the fine range for the offenses would be $35,000 to $10,000,000 plus applicable interest and penalties. Assuming the defendant's estimated offense level above is correct, the fine range for the offenses would be $20,000 to $10,000,000 plus applicable interest and penalties.

r) Pursuant to guideline § 5D1.2(c) and 21 U.S.C. 841(a)(1)(A), if the Court imposes a term of supervised release, that term shall not be fewer than 5 years.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.  ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: _____

_____
Carlos Fong Echavarria
Defendant

Date: 8/10/22

_____
Timothy P. O'Hara

Attorney for Defendant

Date: 8/10/22

*(signature)*

Andrea Surratt
Assistant U.S. Attorney